Filed October 8, 1895.

---

No. 1,712.

## BIDDLE *v.* PIERCE ET AL.

JUDGMENT.—*Agreement Compromising Controversy.—Advancements. —Subsequent Equalization and Extinguishment by Ancestor.— Revival of Advancements by Agreement of Heirs.—Collateral At-*

*tack.*—T, a large property owner, had made advancements in various amounts to his children and grandchildren. Afterwards, being old and infirm and intending to make a general settlement with his descendants, and to equalize former advancements, he made conveyances to them, at the same time surrendering to each all receipts and other evidences of advancements. Subsequently he sold the remainder of his land to M, the husband of one of his daughters, taking notes, secured by mortgage, for the purchase money. After this some of the parties instituted proceedings to have T declared of unsound mind and incapable of managing his estate. While this proceeding was pending T assigned the notes received by him from M to two other children, and soon afterward died. An action was then brought by some of the heirs against the others in which it was sought to have the above mentioned deeds, and the assignments of the notes and mortgage and the delivery of the receipts and notes to his descendants, set aside on account of fraud and undue influence and want of capacity. An agreement of compromise was afterwards made between the parties, and adopted by the court in the judgment rendered in that case, whereby the defendants paid into the hands of C and A, as trustees, a certain sum of money which, after payment of attorneys' fees, costs and expenses, was to be distributed among the plaintiffs according to their interests, "taking into account advancements" theretofore made by T. Action by B, one of the plaintiffs, against the trustees and others, to determine her interest.

*Held,* that the agreement of compromise and the judgment rendered in pursuance thereof are binding upon the parties and not subject to collateral attack ; that, although T may, in his lifetime, have treated the advancements as extinguished, the effect of the agreement was to revive them ; and that the advancements received by B were properly taken into consideration in fixing her interest in the fund in the hands of the trustees.

Same.—*Attorney's Power to Compromise.—Presumption.—Absence of Client.*—The attorney for a party plaintiff will be presumed, until the contrary is shown, to have had full power to bind his client in an amicable settlement of the matters in controversy ; and where an agreement of compromise is signed by him, upon which a judgment is rendered, the judgment is not subject to collateral attack, although the client was not personally present when the compromise was agreed to.

Special Finding.—*Conclusions of law.—Amounts Due Each Party. —Only Necessary to Give Basis for Computation.*—Where there is a special finding and conclusions of law in a case brought to determine the different interests of the parties in a fund, the court

is not bound to state in its conclusions the exact amount coming to each party, but it is sufficient if it give the basis in such manner that, by a mere calculation, the amount can be readily found.

From the Montgomery Circuit Court:

*L. J. Coppage* and *Billings & Son*, for appellant.

*G. W. Paul, M. W. Bruner, B. Crane* and *A. B. Anderson,* for appellees.

REINHARD, C. J.—The controversy in this case is over the partition of certain funds in the hands of Crane and Anderson, trustees, of which appellant and appellees are the owners as the heirs of one Basil Tracy, late of Montgomery county, deceased. Tracy was a large property owner in said county, the father of eight children, some of whom had died when he himself departed this life, each leaving a child or children surviving. Before January, 1891, Tracy had from time to time made various advancements to his children and grandchildren, some of whom had received more than the others, such advancements consisting of land, money and other property in various amounts, and for all of which he took receipts. In January, 1891, Tracy being old and infirm, and with the apparent intention of making a general settlement with his children and grandchildren, in which he intended to equalize or adjust the former advancements as he believed to be proper and right, made and delivered deeds of conveyance to various tracts of lands to such as he deemed not already advanced, at the same time surrendering to each of his children and grandchildren all receipts and other evidences of advancements, and stating that it was for the purpose of a final settlement between them. He afterward made a will in which he directed that the remainder of his estate, consisting of 570 acres of land, be sold

Biddle *v.* Pierce *et al.*

and the proceeds divided among his living children and the descendants of those who were deceased, each child or its representatives taking an equal share. Subsequently he destroyed the will, however, and sold the land to Thomas J. Mills, husband of his daughter Elizabeth, taking for the purchase money eight equal notes of $1,300.00 each, and one other note of $1,000.00. Some time in the year 1891, and subsequently to the sale just mentioned, the parties to the present action instituted a suit in the Montgomery Circuit Court to have said Basil Tracy declared of unsound mind and incapable of managing his estate, intending, if successful, to take further steps to have all his transactions, back to and including the business done by him in January, 1891, declared void on account of his mental unsoundness. After said suit was commenced, Tracy made an assignment of all the notes received for said 570 acres of land, and the mortgage securing the same, to two other of his children, to-wit: Lydia Pierce and Thomas Tracy. In February, 1891, and while said suit was yet pending, Basil Tracy died, intestate, leaving no real estate undisposed of and less than $100.00 worth of personal property.

Some time in 1892 an action was instituted in the Montgomery Circuit in which William R. Pierce, Absalom A. Hauk, Annie E. Brodie, Sarah C. Hauk, Martha Biddle and Malinda Grenard were plaintiffs, and Thomas J. Mills, Elizabeth A. Mills, Lydia Pierce, Sarah A. Grenard, Thomas Tracy, Basil L. Merill, John B. Merill, William B. Merill, Lydia J. Biddle, Elizabeth Shipman and John J. Birdsell were defendants, and in the complaint it was alleged that the deeds for lands executed by Basil Tracy in January, 1891, and all deeds executed by him subsequently thereto, and all receipts and notes delivered up by him to their makers

or to his heirs, and all assignments of notes and mortgages made by him, should be declared fraudulent and void, and set aside on account of fraud and undue influence and want of capacity of Basil Tracy to manage his business. Said suit was removed by change of venue to the Clinton Circuit Court, where it was pending till 1893, when an agreement of compromise was made between the parties and approved and adopted by the court in the decree and judgment rendered accordingly.

In the agreement it was stipulated, among other things, that the title of Thomas J. Mills and Elizabeth Mills, his wife, in and to the 570 acres of real estate be quieted by the decree of the court; that the defendants in said action release all errors and waive their right to a new trial as of right; that judgment be entered in said cause against the plaintiffs therein, and declaring said Basil Tracy to have been a person of sound mind at the time of the execution by him of the several deeds to plaintiffs and defendants in said action; that defendants should pay, within a given time, into the hands of Crane and Anderson, attorneys, the sum of $7,600.00, out of which sum the latter were to pay to one set of grandchildren, the Merills, the sum of $600.00, the remainder of said $7,600.00 to be first applied by said Crane and Anderson to the payment of their fees, costs and expenses in the preparation and trial of said cause, and the balance then remaining to be distributed among the plaintiffs in said action according to their respective interests therein upon a fair and equitable distribution of the same, taking into account advancements theretofore made by said Basil Tracy to them or their respective mothers, daughters of said Basil Tracy. Judgment was duly entered in accordance with said agreement, and the said amount of $7,600.00 was paid, as provided in the contract, to said Crane and Ander-

son, who paid Britton and Moffett, attorneys for the Merill children, the sum of $600.00; they retained their fees and paid costs and expenses, after which they still had in their hands for distribution the sum of $5,743.93.

Martha Biddle, the appellant herein, brought this action against Crane and Anderson and the other appellees to recover her portion of said balance, claiming that she was entitled to one-fourth thereof. Upon issues joined the cause was tried by the court and a special finding of the facts and conclusions of law thereon were made, as requested by the appellees. By the ruling of the trial court it was determined that the agreement entered into between the parties to said former suit and the judgment rendered thereon were in force, and according to the terms thereof the advancements made to the different heirs by Basil Tracy, but which he had canceled and converted into gifts to said heirs at the time of or shortly before the sale of said 570 acres of land, should be counted and charged against them respectively, which would bring the distributive share of the appellant down to $118.00 instead of about $1,500.00, if distributed according to the appellant's claim. The appellant's contention was and is that the court should have disregarded the compromise entered into between the parties to the said former action, or at least so much of it as related to said advancements, for the reason that after Basil Tracy had made a final adjustment among his heirs, in which he had surrendered up to them all evidences of former advancements, thus converting the same into gifts, they were no longer the subjects of compromise or settlement between them; that prior to the death of Tracy his heirs had no such interest in his property as could form the subject of adjustment or distribution among them, and that therefore any disposition by which the former advancements were to be

revived was null and void; that if the compromise is to
stand, however, then it must be considered that the
"advancements" therein spoken of could not have re-
ferred to such advancements as had been canceled and
rendered nugatory by the acts of Tracy, as these were
no longer advancements, but that the same must have
had reference to other advancements made by Tracy to
his children and grandchildren after he had surrendered
up the evidences of such former advancements.

After careful consideration we have come to the con-
clusion that the merits of the controversy were correctly
determined by the trial court.   Conceding that the ap-
pellant's learned counsel are correct in their position as
to the law governing such cases, viz., that the heirs of
Basil Tracy could not at their mere volition during his
lifetime revive the advancements made, but subse-
quently changed into absolute gifts by him, the con-
clusion sought to be deduced from this proposition does
not necessarily follow.   When the compromise relied
upon was entered into, Basil Tracy had departed this
life, and his property had descended to his heirs.   That
they could partition this property among themselves
according to agreement, cannot be doubted.   The suit
then pending was not against Basil Tracy, and he was
no longer concerned in its result, for he was then de-
ceased, but the suit was by a number of his heirs, against
the remaining heirs, its object being to set aside certain
deeds made by Tracy in January, 1891, and to declare
void the execution of all receipts and the delivery of all
notes delivered up by him to their maker or to his heirs,
and all assignments of notes or mortgages made or
executed by him, on account of alleged fraud or undue
influence.   The presumption is conclusive that the com-
promise of this suit upon the terms mentioned in the
agreement, and the judgment rendered in pursuance

thereof, rested upon a valid and sufficient consideration, and that the same are entitled to full force and credit. Whatever were the terms of such compromise and the provisions of the judgment, they are binding upon the parties and not subject to collateral attack as long as they stand. This being so, the legal principles sought to be invoked by appellant's counsel are not applicable. We do not take issue with counsel that the parent after having made an advancement to one or more of his children may. change the character of the gift so as not to have it charged as an advancement. But while this is so, we know of no rule which prevents the child, in a suit concerning its distributive share, instituted subsequently to the death of the parent, from compromising the matters involved in the litigation by an agreement to revive the original advancements, though these may have been treated as extinguished by the parent, and though the suit may have been instituted by the child itself, or by it and other children against still other children or heirs of the decedent. This, in effect, was what was done in the case in hearing, and nothing has been shown to convince us that the compromise made is not entitled to have its full force and validity. To say that the word "advancements" in the agreement of compromise could not have had reference to advancements which had been extinguished by the acts of the decedent would be to render said word in the instrument wholly meaningless, for the reason that no other advancements could from the very nature of the transaction have been considered by the parties. The court evidently gave the compromise this construction, and we think in the light of the history of the transaction, considered in connection with the stipulations of the agreement, such construction was proper and right.

Nor are we able to agree with counsel that appellant

is not bound by the compromise because she was not personally present when it was entered into. The appellant was a party plaintiff to the suit compromised, and was represented by attorneys, who must be presumed to have had full power to bind her in an amicable settlement of the matters in controversy, until the contrary is made to appear. If the attorney had no authority to bind the appellant by agreeing to such a judgment, she should have taken steps to set it aside. As long as the judgment stands, it cannot be attacked thus collaterally. Van Fleet Coll. Attack, p. 420.

The facts heretofore stated in this opinion were found specially by the court, and conclusions of law were stated therefrom. To the conclusions the appellant excepted. From what we have said, it must be apparent that we regard the court's conclusions as proper. Some objection is made also to the form of the conclusions, but we do not regard such objection as tenable. The court was not bound to state the exact amount coming to each party. If it gave the basis of the same in such a manner that by a mere calculation the amount could be readily found, we think it was sufficient. This is what was done by the court. The judgment following the conclusions specifically sets forth the several amounts coming to the respective parties as ascertained from the findings and conclusions of law. *Sanders* v. *Scott*, 68 Ind. 130; *Dawson* v. *Shirk*, 102 Ind. 184; *Chambers* v. *Butcher*, 82 Ind. 508.

Appellant's counsel also call in question the sufficiency of the evidence to support the finding. We have examined the evidence and do not well see how the court could have found otherwise upon the main issues involved. The evidence fully sustains the finding.

Other questions of minor importance are presented by counsel, but we do not deem them of sufficient con-

sequence to give them further consideration. We think the merits of the case were correctly determined, and that the court committed no reversible error in any of its rulings.

Judgment affirmed.

Filed October 8, 1895.